UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RIGOBERTO GARCIA LARIOS,

Petitioner,

v.

PAMELA BONDI, et al.,

Respondent.

Case No. 2:26-cv-00629-TLF

ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS IN PART (DKT. 1)

Petitioner Rigoberto Garcia Larios is a native and citizen of Mexico currently detained by U.S. Customs and Immigration Enforcement ("ICE") at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. 1 at 7; Dkt. 6 at 1. He petitions for a writ of habeas corpus under 28 U.S.C. § 2241. Dkt. 1.

For the reasons below, the Court **GRANTS** the petition and **ORDERS** respondents to release petitioner within **24 hours** of when this Order is filed.

## I.    BACKGROUND

Petitioner is a native of Mexico who entered the United States in June 1996. Dkt. 1 at 8. After coming to the U.S., petitioner married his wife, a Lawful Permanent Resident, and they had three U.S. citizen children. Dkt. 1 at 8.

In December 2022, petitioner filed an Adjustment of Status Application with the U.S. Citizenship and Immigration Services ("USCIS"). Dkt. 1 at 8.That same month,

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT. 1) - 1

petitioner's son filed an I-130 Petition for Alien Relative on petitioner's behalf. Dkt. 1 at 8. In October 2024, the I-130 petition was approved. Dkt. 1 at 8.[1]

On August 6, 2025, respondents detained petitioner while he was attending an interview at the U.S. Citizenship and Immigration Services ("USCIS") Yakima Field Office. Dkt. 1 at 9; Dkt. 1-1 at 93 (Form I-213). The Form I-213 states that petitioner had applied for employment authorization, it had been approved and was valid from October 5, 2023, through September 25, 2025. Dkt. 1-1, at 94. This Form I-213 also provides a list of convictions from 1996 – 2009, where he was found guilty of several offenses in state court in California, for theft, DUI, and traffic-related crimes. *Id*. at 94-95. Petitioner submitted documents to the IJ for his custody redetermination hearing in December 2025, showing that all charges had been resolved in California, he did not have any criminal history in Washington State, and no warrants were pending. Dkt. 1-1 at 58, 60-71.

Also on August 6, 2026, respondents issued a Notice to Appear ("NTA") which expressly did not designate petitioner as an "arriving alien" and stated he was "an alien present in the United States who has not been admitted or paroled." Dkt. 1-1, at 3; Dkt. 7-3. The Notice to Appear charged that petitioner was subject to removal under "212 (a)(6)(A)(i) of the Immigration and Nationality Act, as amended, in that you are an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General."

---

[1] Adjustment of status, and filing an I-130 application, is a multi-step process that allows a relative of a non-citizen present in the United States to request a change in the non-citizen's status; if the I-130 application is granted, there are additional steps the non-citizen must take to change their immigration status from non-immigrant to lawful permanent resident. *See Ayanian v. Garland,* 64 F.4th 1074, 1081-83 (9th Cir. 2023).

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT. 1) - 2

Dkt. 1-1 at 3. The Notice to Appear ordered petitioner to appear at a hearing before an Immigration Judge ("IJ") on August 19, 2025, to show cause why he should not be removed. *Id.* Briefing by petitioner's counsel during adjustment of status application proceedings indicates the individual hearing was later scheduled for September 25, 2025. Dkt. 1-1 at 31-32.

In September 2025, petitioner re-filed his Adjustment of Status Application after USCIS closed it for a lack of jurisdiction as petitioner was now in removal proceedings. Dkt. 1-1 at 14-43. On September 25, 2025, an IJ held an individual hearing and denied petitioner's Application for Adjustment of Status. Dkt. 1-1 at 45-48. The Order denying the Application for Adjustment of Status states that plaintiff "was ordered removed to MEXICO". *Id.* at 47. Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), and this appeal remains pending. Dkt. 1 at 10; Dkt 1-1 at 45-47, 50.

In December 2025, petitioner moved for a Custody Redetermination Hearing and requested release on bond. Dkt. 1-1 at 54-102. Later that same month, an IJ held a hearing and issued a written order denying petitioner's motion on two bases. Dkt. 1-1 at 11.

First, the IJ determined the Immigration Court had "No Jurisdiction" as petitioner was subject to "Mandatory Detention under Matter of YAJURE HURTADO, 29 I&N Dec. 2016 (BIA 2025)." Dkt. 1-1 at 11. In *Matter of Yajure Hurtado*, the BIA upheld an IJ's order finding a lack of jurisdiction to hear a non-citizen's bond hearing on the basis he was mandatorily detained under 8 U.S.C. § 1225(b)(2). 29 I&N Dec. 216 (BIA 2025).

Second, the IJ found that "[i]n the alternative, if the court had jurisdiction the court would deny the bond as the respondent has been found to be a danger to the

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT. 1) - 3

community and a flight risk." Dkt. 1-1 at 11. Neither party has filed a transcript of the December 17, 2025, bond hearing.

## II.   DISCUSSION

### A. Bond Denial Class Membership

As a preliminary note, petitioner asserts, and respondents do not dispute, that he falls within the Bond Denial Class certified within *Rodriguez Vazquez v.* Bostock, 802 F. Supp. 3d 1297, 1336 (W.D. Wash. 2025) by Judge Tiffany M. Cartwright. Dkt. 1 at 18; Dkt. 6 at 2 (arguing instead that petitioner's "detention is properly governed by 8 U.S.C. § 1225(b)(2)(A).").

For the Bond Denial Class, the Court "declare[d] that Bond Denial Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)" and IJ's "practice of denying bond to Bond Denial Class members on the basis of § 1225(b)(2) violates the Immigration and Nationality Act." *Rodriguez Vazquez*, 802 F. Supp. 3d at 1336.

Regardless of membership in the Bond Denial Class, subsequent decisions from Judge Cartwright have explained that an "IJ's determination that [the petitioner] presents a flight risk and danger to the community is a separate basis for the 'legality of [their] custody.'" *Corrales Castillo v. Wamsley*, No. 2:25-cv-02172-TMC, 2025 WL 3204370 at *2 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

Thus, a petitioner seeking relief under *Rodriguez Vazquez* who had also been determined by an IJ to be a danger or flight risk would "essentially ask[] the Court to restate that the declaratory judgment in *Rodriguez Vazquez* applies to [them] if [they] overturn[] the other basis for [their] detention through [their] BIA appeal." *Id.* at *3

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT. 1) - 4

"Speculation that the BIA will ignore the existence of *Rodriguez Vazquez* entirely and thus decline to review the alternative basis for [the petitioner's] detention is not sufficient grounds for what would essentially be advisory habeas relief." *Id.*; *see also Vasquez Garcia v. Hermosillo*, No. 2:25-cv-02597-TMC, 2026 WL 81783 at *1-2; *Aburto Lopez v. Scott*, No. 2:25-cv-02541-TMC, 2026 WL 194234 at *2 (W.D. Wash. Jan. 26, 2026).

Thus, to the extent he petitioner here is a member of the *Rodriguez Vazquez* class, he is not entitled to relief on that basis alone.

**B. *Mathews* Claim**

Petitioner also asserts he is entitled to relief under *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Dkt. 1 at 19.

As a preliminary matter, respondents argue the Court is foreclosed from reviewing petitioner's claim and they make three points.

First, respondents state they "believe that Petitioner's detention is properly governed by 8 U.S.C. § 1225(b)(2)(A)." *E.g.* Dkt. 6 at 2 (citing *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026)).

Yet respondents' Notice to Appear, dated August 8, 2025, expressly declined to designate petitioner as an "arriving alien," instead stating he is "an alien present in the United States who has not been admitted or paroled." Dkt. 7-3. *See Garcia Gabriel v. Hermosillo*, No. 2:25-cv-02594-DGE-GJL, 2026 WL 194233 at *3 (W.D. Wash. Jan. 26, 2026) ("Notably, the issuing officer explicitly declined to designate Petitioner as an 'arriving alien,' . . . which is the active language used to define the scope of § 1225(b)(2)(a) in its implementing regulation.") (citing *Martinez v. Hyde*, 792 F. Supp. 3d 211, 218-19 (D. Mass. 2025)).

Second, respondents argue that "[t]o the extent that Petitioner disagrees with the immigration court's alternative order, the discretionary decision is not reviewable by this Court." Dkt. 4 (citing 8 U.S.C. § 1226(e)).

Under § 1226(e), if petitioner's habeas corpus claim is essentially a request for the Court "to second-guess the immigration judge's weighing of evidence, that claim is unreviewable." *Garcia Gabriel*, 2026 WL 194233 at *4. "But § 1226(e) does not preclude 'habeas jurisdiction over constitutional claims or questions of law.'" *Id.* (quoting *Hernandez v. Sessions*, 872 F.3d 976, 987 (9th Cir. 2017)).

Third, respondents invoke exhaustion of administrative remedies, and contend that the Court should require petitioner to appeal the immigration judge's bond determination to the BIA, because that remedy is available to him. *E.g.* Dkt. 6 at 4.

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted). But a court "may waive the prudential exhaustion requirement if administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Hernandez v. Sessions*, 872 F.3d 976, 988 (9th Cir. 2017) (quotation marks and citations omitted).

This Court agrees with the reasoning of other Courts that have held the petitioner should not be required to comply with the exhaustion requirement when "'it is clear any immigration judge and the BIA would accept § 1225(b)(2) applies to Petitioner given the BIA's recent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) . . .'"

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT. 1) - 6

*Mendoza v. Noem*, 2026 WL 683180 at *8, *report and recommendation adopted* 2026 WL 927654 (E.D. Cal. Apr. 6, 2026) (quoting *Prem S. v. Warden of Golden State Annex Det. Facility*, No. 1:25-cv-01869-TLN-SCR, 2025 WL 3724854, at *2 (E.D. Cal. Dec. 24, 2025)). Here, the Court finds waiver of the exhaustion requirement is similarly justified; the IJ has relied on *Yajure Hurtado* and found a lack of jurisdiction. *See* Dkt. 1-1 at 11.

Turning to the merits of petitioner's *Mathews* claim, the Court agrees with the reasoning of *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1320-24 (W.D. Wash. 2025) and *Mendoza*; these opinions analyzed *Mathews* claims under similar facts.

The three-factor *Mathews* test examines: (1) The private interest affected by the official action; (2) the risk of erroneous deprivation of such interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail. 424 U.S. at 335.

The first *Mathews* factor weighs in petitioner's favor.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Non-citizen immigration detainees have the same fundamental liberty interest. *Hernandez v. Session*, 872 F.3d 976, 993 (9th Cir. 2017).

The second *Mathews* factor weighs in petitioner's favor.

In *Mendoza*, the Court considered a situation similar to this case. Petitioner Mendoza entered the United States in 1994, subsequently applied to adjust his status,

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT. 1) - 7

but was detained by the government in 2025. *Mendoza*, 2026 WL 683180 at *1. When Mendoza requested a custody redetermination, the IJ denied the request under *Yajure Hurtado* and alternatively found he was a flight risk. *Id.*

Here, petitioner entered the United States in 1996, was released into the community, had applied with the government to adjust his status among other applications, and was detained without a pre-arrest hearing, in August 2025. Dkt. 1 at 8-9;.Dkt. 7-3. Similar to *Mendoza*, an IJ denied petitioner's request for release based on *Yajure Hurtado* and alternatively found him to be a community danger and flight risk. Dkt. 1-1 at 11; Dkt. 7-1.

Petitioner in the present case also received a bond redetermination hearing in December 2025 after having been detained since early August 2025. The risk of erroneous deprivation and probable value of additional safeguards that a pre-deprivation hearing would provide, are critical considerations under *Mathews*. Even if the Government believes it has a lawful basis for detention, that belief "does not eliminate [its] obligation to effectuate the detention in a manner that comports with due process." *E.A. T.-B.*, 795 F. Supp. 3d at 1322. For civil immigration detention to be consistent with due process, it must be both "nonpunitive in purpose" and bear "reasonable relation" to the statutory purposes of preventing flight and preventing dangerousness. *Zadvydas,* 533 U.S. at 690. The arrest and detention of petitioner without first holding a hearing to determine the legal and factual basis for holding him, and without considering evidence of risk of flight or dangerousness before taking him into custody, shows the risk of erroneous detention is high, and shows the purpose of petitioner's detention may be punitive and not consistent with purposes of preventing

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT. 1) - 8

flight or dangerous behavior in the community; thus the second *Mathews* factor weighs heavily in petitioner's favor.

The third *Mathews* factor also weighs in petitioner's favor.

"[T]he government clearly has a strong interest in preventing [non-citizens] from 'remain[ing] in the United States in violation of our law.'" *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (2022) (quoting *Denmore v. Kim*, 538 U.S. 510, 518 (2003)). While "we 'must weigh heavily in the balance that control over matters of immigration is a sovereign prerogative'" of the executive and legislature, *id*. (quoting *Landon v. Plasencia*, 459 U.S. 21, 34 (1982)), respondents here have not articulated a compelling interest in arresting and detaining an individual without due process. *E.A. T.-B.*, 795 F. Supp. 3d at 1323-1324.

As all three factors weigh in petitioner's favor, the Court finds he is entitled to a pre-deprivation hearing, before any arrest, under *Mathews*. Although petitioner requested a bond hearing and in December 2025 the IJ held a hearing, it was after-the-fact; such a hearing "cannot prevent an erroneous deprivation of liberty." *E.A. T.-B.*, 795 F. Supp. 3d at 1324.

## C. Remedy

The federal district courts in *Garcia Gabriel* and *Mendoza* ordered the petitioner be provided a post-deprivation bond hearing and not immediate release. *Garcia Gabriel*, 2026 WL 194233 at *5-6; *Mendoza*, 2026 WL 683180 at *8-9, *report and recommendation adopted*, 2026 WL 927654 (April 6, 2026). But the remedies ordered in those cases were based on circumstances distinguishable from the present matter.

First, *Garcia Gabriel* so ordered based on the fact "an immigration judge terminated Petitioner's removal proceedings" in contrast to authorities involving "active removal proceedings." 2026 WL 194233 at *5 (emphasis removed) (citing *E.A. T.-B.*, 795 F. Supp 3d at 1319) (noting also that "[b]ecause the Court is not convinced the Order of Release remained operative after the termination of removal proceedings, the Court is unable to conclude Respondents lacked authority to re-detain Petitioner."). Here, there is no dispute that petitioner's immigration proceedings are ongoing. *See* Dkt. 1 at 10; Dkt 1-1 at 45-47, 50 (petitioner appealed the IJ's order both denying his adjustment of status application and ordering him removed to Mexico).

Second, the Court in *Mendoza* found a post-deprivation hearing is "'consistent with other post-*Jennings* cases.'" 2026 WL 683180 at *8 (quoting *Lopez v. Garland*, 631 F. Supp. 3d 870, 882 (2022)). As discussed in *Mendoza*, the Supreme Court in *Jennings v. Rodriguez* held the "Ninth Circuit erred in finding a *statutory* right to *periodic* bond hearings under § 1225(b) and § 1226(a) but did not address the constitutional arguments." *Mendoza*, 2026 WL 683180 at *4 (emphasis in original) (citing *Jennings v. Rodriguez*, 583 U.S. 281, 297-98 (2018) (rejecting an argument that "that §§ 1225(b)(1) and (b)(2) contain an implicit 6–month limit on the length of detention" and "[o]nce that 6–month period elapses, respondents contend, aliens previously detained under those provisions must instead be detained under the authority of § 1226(a)")).

Here, in contrast, the dispute does not center around *Jennings* or any requirement for 'periodic' bond hearings after detention. Rather, this matter concerns the pre-deprivation due process petitioner is entitled to upon his detention by respondents.

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT. 1) - 10

This Court in *S.K. v. Hermosillo*, No. 2:26-cv-00789-TLF, 2026 WL 936458 (W.D. Wash. Apr. 7, 2026), with facts similar to the present matter, determined "the IJ held that there was no jurisdiction" as "that petitioner was subject to mandatory detention . . . and, in the alternative, the request for change in custody status was denied due to flight risk." *Id.* at *2. The Court reasoned under *Mathews* that "[t]here was no neutral decisionmaker" as "[a]lthough Immigration Judge . . . later made an alternative flight risk finding, petitioner was not afforded proper pre-deprivation procedures at the IJ hearing." *Id.* at 4. The same is true here.[2]

The Court thus finds that pre-deprivation relief, i.e. release, is warranted in the present matter.

### III.    CONCLUSION

For the reasons above, the Court **GRANTS** the petition and **ORDERS:**

1) The Court finds that petitioner is detained under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b).

2) Respondents **SHALL immediately release** petitioner from custody within **24 hours** of the filing of this Order.

3) Petitioner is entitled to notice and a pre-deprivation hearing at which a neutral decision-maker must determine – before petitioner's arrest and detention -- whether there is any valid basis for arrest and detention, i.e., whether he poses a

---

[2] It does not appear the government is pointing to petitioner's criminal history as a basis for a post-deprivation hearing; but even if they were to assert such a theory, it is undisputed that (1) petitioner's most recent conviction occurred approximately 15 years ago in 2009 and was for a "Licensing Violation", and (2) petitioners' Form I-213 lists his criminal history, but does not appear to expressly assert it as a substantive basis for petitioner's arrest and detention. Dkt. 1-1 at 91-95.

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT. 1) - 11

danger to the community or a flight risk that can only be mitigated through detention.

- This hearing must comply with the due process requirements of *Singh v. Holder*, including that the "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond" and that the hearing must have "a contemporaneous record." 638 F.3d 1196, 1203, 1208 (9th Cir. 2011). If a non-citizen has been "determined not to be a danger to the community, and not to be so great a flight risk as to require detention without bond," due process requires the immigration court to consider financial circumstances regarding ability to afford to pay bail, and alternative conditions of release. *Hernandez v. Sessions*, 872 F.3d 976, 991-994 (9th Cir. 2017); *see also Mendoza,* 2026 WL 927654 at *1.

4) No later than **two business days** following petitioner's release, respondents must file with the Court a declaration confirming the date and time petitioner was released from custody.

5) The Court will consider any post-judgment motion for attorney's fees, as requested in the petition.

Dated this 21st day of April, 2026.

Theresa L. Fricke
United States Magistrate Judge

ORDER GRANTING PETITION FOR A WRIT OF
HABEAS CORPUS IN PART (DKT. 1) - 12